UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 10-22335-CIV-HUCK/DUBÉ

THERESA WALKER,

    Plaintiff,

v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

THIS CAUSE is before this Court on the Motion for Summary Judgment filed by the Plaintiff (D.E. #19) and the Motion for Summary Judgment filed by the Defendant (D.E. #20) pursuant to a Clerk's Notice of Magistrate Judge Assignment entered by the Clerk of Court, United States District Court for the Southern District of Florida. The issue before the Court is whether the record contains substantial evidence to support the denial of benefits to the Plaintiff, Theresa Walker (hereinafter "Walker" or "Plaintiff").

### I. FACTS

Walker filed an application for supplemental security income (hereinafter "SSI") on January 19, 2005, which asserted disability as of October 31, 2002. (R. 71-74).[1] The application was denied initially and on reconsideration. (R. 27-28, 47-49, 53-55). Following a hearing on February 11, 2008 (R. 922-937), the ALJ issued a decision denying the request for supplemental security income. (R.

---

1. All references are to the record of the administrative proceeding filed as part of the Defendant's answer. At the time of the hearing, the Plaintiff amended her onset date of disability to January 1, 2007. (R. 930). However, the ALJ incorrectly noted the amended onset date of disability as January 12, 2007. (R. 19).

14-23). On May 14, 2010, the Appeals Council denied a request for review. (R. 5-9).

The Plaintiff, age 49 at the time of the hearing on February 11, 2008, testified she graduated from high school. (R. 924). The Plaintiff further testified that for the past 15 years she worked as a cook, in housekeeping and stage production. According to Walker, she stopped working in October 2006, because she was unable to stand on her feet. (R. 925).

Walker claimed she went to see her psychiatrist once a month or once every other month for individual therapy, and her primary care doctor every four months. The Plaintiff testified the last time she saw a doctor was a month before the ALJ hearing. The Plaintiff testified she was on four medications prescribed by her psychiatrist and three medications prescribed by her primary care physician. (R. 926).

Additionally, Walker stated she did not have a driver's license because it had been suspended due to an automobile accident. (R. 926-927). The Plaintiff explained she "overtook" her medication and fell asleep while driving and crashed three cars. When asked how she commuted to the ALJ hearing, the Plaintiff indicated she took the train and bus. (R. 927).

The Plaintiff asserted she could not walk far and she could not stand long. The Plaintiff testified she could probably lift five pounds and had problems with her hand due to "getting gout... from [using her] wheelchair." The Plaintiff testified she was prescribed a wheelchair a year and a half to two years prior to the hearing as a result of an injury to her feet caused by her Army boots. (R. 927). The Plaintiff testified she had been treated at the Veteran's Administration Hospital twice a month since 1985. (R. 928). The Plaintiff asserted she had been in the Army for a month and a half but she was unable to march in boots. (R. 928-929).[2]

---

2. George E. Stocking, Ed.D., Counseling Psychologist, noted in a Vocational Counseling and Evaluation Report on July 27, 2005, that the Plaintiff served in the Army from 1976 to 1979. (R. 375).

2

According to the Plaintiff, between the hours of 6:00 A.M. to 12:00 Noon she watches television, but added she could not follow the plot of the television program. (R. 929, 933-934). The Plaintiff stated her girlfriend did the dishes, laundry and housework. (R. 929). When asked by counsel for the Plaintiff what she was capable of doing around the house, the Plaintiff stated she could not wash dishes and cook because she "can't reach it in the chair." (R. 933).

Counsel for the Plaintiff asked Walker if she had earnings in her record for the calendar years of 2005 and 2006. (R. 929). Walker responded that she had earned money "doing hair" at her house, specifically, hair braiding. (R. 929). When asked by counsel why she could not work anymore, the Plaintiff stated she had cramps in her hands and she could not do hair like she used to. Walker also stated she was unable to stand, but she did not know what was wrong with her feet. (R. 930).

Furthermore, counsel for the Plaintiff asked Walker what kind of symptoms she had with her psychiatric illness and the Plaintiff responded, "I hear voices telling me to hurt people and hurt myself, to end my life." (R. 930). Walker stated she heard voices almost every day and she saw spots and little insects flying. (R. 930-931). Additionally, Walker explained that when she hears voices, she turns off the television and goes to her room to read her Bible until she is comforted, which takes a couple of hours. When asked if she could keep a job if she heard voices, Walker answered in the negative. (R. 931). The Plaintiff testified she saw things twice a week and she had to take pills and go to sleep so she would not have to see them any longer. The Plaintiff stated if she were to work and she saw something, she would have to close her eyes for an hour or two. (R. 932).

Counsel for the Plaintiff asked the Plaintiff about how her foot pain affected her. (R. 932). Walker stated she had foot pain all of the time and could probably stand for two to three minutes. (R. 932). Walker testified that she could walk a block if she were to hold onto something. (R. 932-933). Additionally, the Plaintiff testified she had pain in her hip and her knee every day. (R. 933).

The Plaintiff testified she did not go out to visit friends or go shopping because it was too much trouble getting around in the wheelchair and she did not have transportation. The Plaintiff testified that when she got angry at her friends or family she had to "leave and go somewhere away to myself" for the rest of the day. (R. 934). When questioned by Plaintiff's counsel regarding co-workers, the Plaintiff testified it would be hard for her to get along with her co-workers because she saw things differently. Additionally, the Plaintiff testified it would be difficult for her to get along with her bosses for the same reason. (R. 935).

The ALJ asked Walker about her alcohol and cocaine use, and she testified she no longer drank alcohol and stopped using cocaine. (R. 935-936). The Plaintiff asserted she stopped drinking alcohol and using cocaine eight months to a year prior to the date of the hearing, when she completed a rehabilitation program. (R. 936).

In addition to the testimony presented at the hearing, medical records were submitted to the ALJ. However, a review of the medical records and the specific issues raised by the Plaintiff in her Motion for Summary Judgment shows that the resolution of the issues do not require this Court to specifically set out all the medical evidence in detail. Accordingly, this Court will discuss the legal issues involved and will incorporate the facts as appropriate within the arguments presented below.

After a hearing and review of the record, the ALJ issued an opinion finding that the Plaintiff's impairments of pes planus/tival tendon dysfunction was severe, but did not meet or equal the severity in the listing of impairments. Additionally, the ALJ found that the mental impairment asserted by the Plaintiff was not severe. (R. 19). According to the ALJ, the Plaintiff retained the residual functional capacity to perform light and sedentary work. (R. 20). The ALJ further found that the Plaintiff was capable of performing her past relevant work as a hair braider and said work did not require the performance of work-related activities precluded by the Plaintiff's residual functional

capacity. (R. 23). In so finding the aforementioned determinations, the ALJ stated the following:

> After considering the evidence of record... the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible.

(R. 21).

The ALJ further stated the following:

> Physical or mental impairments must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. An individual's statements alone are not enough to establish that there is a physical or mental impairment. The claimant's subjective complaints and symptoms, including the allegations of foot pain and back pain, as well as affective disorder, have been given a great deal of thought and carefully compared to the other evidence. It is further noted that the claimant is not complaint with treatment or medications, and has been able to work.

(R. 22)(citations omitted).

## II. LEGAL ANALYSIS

Judicial review of the factual findings in disability cases is limited to determining whether the record contains substantial evidence to support the ALJ's findings and whether the correct legal standards were applied. 42 U.S.C. section 405(g); Richardson v. Perales, 402 U.S. 389, 401 (1971); Kelley v. Apfel, 185 F.3d 1211, 1213 (11th Cir. 1999); Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). "Substantial evidence" is more than a scintilla, but less than a preponderance and is generally defined as such relevant evidence which a reasonable mind would accept as adequate to support a conclusion. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997).

In determining whether substantial evidence exists, the court must scrutinize the record in its entirety, taking into account evidence favorable as well as unfavorable to the Commissioner's

decision. Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995); Lamb v. Bowen, 847 F.2d 698, 701 (11th Cir. 1988). The reviewing court must also be satisfied that the decision of the Commissioner correctly applied the appropriate legal standards. See, Bridges v. Bowen, 815 F.2d 622, 624 (11th Cir. 1987). The court may not reweigh evidence or substitute its judgment for that of the ALJ, and even if the evidence preponderates against the Commissioner's decision, the reviewing court must affirm if the decision is supported by substantial evidence. See, Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991); Baker v. Sullivan, 880 F.2d 319, 321 (11th Cir. 1989).

The restrictive standard of review set out above applies only to findings of fact. No presumption of validity attaches to the conclusions of law found by the Commissioner, including the determination of the proper standard to be applied in reviewing claims. Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991); Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). The failure by the Commissioner to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal. Cornelius v. Sullivan, 936 F.2d 1143, 1145-1146 (11th Cir. 1991); See also, Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982).

Social Security regulations establish a five-step sequential analysis to arrive at a final determination of disability. See, 20 C.F.R. section 404.1520; 20 C.F.R. section 416.920 (a)-(f).

The ALJ must first determine whether the claimant is presently employed. If so, a finding of non-disability is made, and the inquiry ends. 20 C.F.R. section 404.1520(b). In the second step, the ALJ must determine whether the claimant suffers from a severe impairment or combination of impairments. If such a finding is not made, then a finding of non-disability results, and the inquiry ends. 20 C.F.R. section 404.1520(c).

At step three, the ALJ compares the claimant's severe impairments to those in the listing of

impairments. 20 C.F.R. section 404.1520(d), subpart P, appendix I. Certain impairments are so severe, whether considered alone or in conjunction with other impairments, that if such impairments are established, the regulations require a finding of disability without further inquiry into the claimant's ability to perform other work. See, Gibson v. Heckler, 762 F.2d 1516, 1518, n.1 (11th Cir. 1985). If the impairment meets or equals a listed impairment, disability is presumed, and benefits are awarded. 20 C.F.R. section 404.1520(d).

Step four involves a determination of whether the impairments prevent the claimant from performing his or her past relevant work. If the claimant cannot perform his or her past relevant work, then a prima facie case of disability is established and the burden of going forward with the evidence shifts to the Commissioner to show, at step five, that there is other work available in the national economy which the claimant can perform. 20 C.F.R. section 404.1520(e)-(f).

The claimant bears the initial burden of proving that he is unable to perform previous work. See, Barnes v. Sullivan, 932 F.2d 1356, 1359 (11th Cir. 1991). The inability to perform previous work relates to the type of work performed, not to merely a specific prior job. See, Jackson v. Bowen, 801 F.2d 1291, 1293 (11th Cir. 1986).

The Plaintiff's first point of contention is that the ALJ erred by not finding the Plaintiff's Major Depressive Disorder with psychotic features to be a severe impairment. Moreover, the Plaintiff argued that the ALJ erred in stating his finding was supported by Dr. Weitz's consultative evaluation.

The determination of whether an impairment is severe or not at step two of the sequential analysis is a threshold inquiry. McDaniel v. Bowen, 800 F.2d 1026, 1031 (11th Cir. 1986). The court in McDaniel elaborated on the requirements for a finding of severity as follows:

> It allows only claims based on the most trivial impairments to be rejected. The claimant's burden at step two is mild. An impairment

> is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience. Claimant need show only that her impairment is not so slight and its effect is not so minimal.

McDaniel, 800 F.2d at 1031; see also, Bridges v. Bowen, 815 F.2d 622, 625 (11th Cir. 1987). It is the duty of the ALJ to fully develop the record. See, Graham v. Apfel, 129 F.3d 1420, 1422-23 (11th Cir. 1997). Development of a full record may include ordering a consultative examination to enable the ALJ to make an informed decision. Hollawday v. Bowen, 848 F. 2d 1206, 1209 (11th Cir. 1988); West v. Barnhart, 300 F.Supp.2d 1264, 1271 (S.D. Fla. .2003).

In the instant matter, the ALJ specifically used Dr. Weitz's and State Agency consultative evaluations to determine that Walker's alleged mental impairment was not severe; and that she had no restrictions of activities of daily living, mild difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence or pace, and no episodes of decompensation. (R. 20). However, the Psychological Evaluation performed by Jack R. Weitz, Ph.D. indicated the Plaintiff was diagnosed with Major Depressive Disorder with Psychotic Features. (R. 393). Moreover, Dr. Weitz noted Walker appeared to experience psychotic involvement "as she admitted to auditory hallucinations and suspicious ideation." (R. 392). Additionally, Dr. Weitz summarized that Walker's prescribed medication may have masked the severity of her illness. (R. 392).

The ALJ's decision failed to specify the diagnosis of Major Depressive Disorder with Psychotic features. Rather, the ALJ simply noted the Plaintiff's alleged disability due to "an affective disorder." (R. 19). The ALJ also failed to cite to any information contained within Dr. Weitz's evaluation of the Plaintiff and instead chose to note that the findings regarding the Plaintiff's

limitations were supported by the consultative evaluation in its entirety. (R. 20). Furthermore, the State Agency findings mentioned by the ALJ diagnosed Walker with Adjustment Disorder with Depressed Mood and depression. (R. 503-506, 523-525). These findings are also not discussed by the ALJ in his opinion.

The burden to demonstrate a "severe" impairment is light, and the Court finds the opinions given by Dr. Weitz's and State Agency consultants were enough to at least meet this burden. Accordingly, this Court agrees with the Plaintiff and finds that the Plaintiff's Major Depressive Disorder with psychotic features is severe.

The Plaintiff's second point of contention is that the ALJ erred by not giving controlling weight to the opinion of the treating physician. Specifically, the Plaintiff argues that the ALJ failed to provide good cause as to why the opinion of the treating physicians of Miami Veteran's Administration Hospital were not given controlling weight.

The opinion of a treating physician is entitled to substantial weight unless good cause exists for not heeding the treating physician's diagnosis. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997). Good cause has been seen when the treating doctor's opinion was not bolstered by the evidence; the evidence supported a contrary finding or the opinion was conclusory or inconsistent with the physician's own medical records. If the ALJ disregards the opinion of a treating physician, the ALJ must clearly articulate his reasons. See Phillips v. Barnhart, 357 F.3d 1232, 1240-1241 (11th Cir. 2004).

In the instant case, Luis M. Bencomo, M.D., director of the Behavioral Health Clinic in the Department of Veterans Affairs stated in a letter dated June 27, 2005, that the Plaintiff was under his care and Walker was diagnosed with Major Depressive Disorder with Psychosis. (R. 402). Dr.

Bencomo further stated the Plaintiff was unable to hold a job in the past two years and continued to be unable to work. (R. 402). Dr. Bencomo also signed a loan discharge application on the basis that the Plaintiff was diagnosed with Major Depressive disorder with Psychosis and experienced hallucinations, paranoia and depressed mood. (R. 403). Dr. Bencomo noted the Plaintiff's medical condition began in 2002. (R. 403).

The facts of this case are similar to those found in Toney, wherein the Plaintiff was involved in a slip and fall accident at work in 1998 and was unable to perform the job because of neck, arm and back pain. Toney v. Barnhart, 2005 WL 61504, at *1, *3, (N.D. Ala.). The Court in Toney noted the Plaintiff began seeing a psychiatrist in 1988 and after stopping work in 1999, the depression continued. The Court held that improper legal standards were applied when the ALJ found that the Plaintiff's depression was not severe. In so finding, the court stated, "Indeed, the evidence is overwhelming that plaintiff has been suffering severely with this problem over a period of many years. The ALJ failed to follow the opinions of plaintiff's treating physician and that of the consulting physician." Toney, 2005 WL 61504, at *5, (footnote omitted).

This Court previously held that a treating physician's opinion will be given controlling weight if it is well supported by medically acceptable clinical and diagnostic techniques and is consistent with other evidence in the record. Holley v. Charter, 931 F. Supp. 840, 849 (S.D. Fla. 1996). Further, a treating doctor's opinion is entitled to more weight than a consulting doctor's opinion. Wilson v. Heckler, 734 F.2d 513, 519 (11th Cir. 1984).

In the instant matter, much like the facts in Toney, the ALJ did not specifically discuss the opinion of the treating physician, Dr. Bencomo. The regulations and Eleventh Circuit case law are clear that an ALJ must specifically state the reasons for rejecting the opinion of the treating

10

physician. The opinion of Dr. Bencomo was not mentioned or discussed by the ALJ, and thus, remand is required.

The Plaintiff's third point of contention is that the ALJ erred in finding the Plaintiff was not disabled because she could perform her past work as a hair braider. Specifically, the Plaintiff contends the ALJ's determination that the work was sedentary and unskilled was not supported by substantial evidence.

The Plaintiff's argument concerning the finding by the ALJ that the Plaintiff could perform her past work as a hair braider relate to the step 4 finding that the Plaintiff could perform her prior work. In making such a finding the ALJ simply stated that "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence" were considered in making the finding that the Plaintiff could perform her past work. (R. 20). The ALJ found that the Plaintiff retained the residual functional capacity to perform light and sedentary work. (R. 20). Specifically, the ALJ stated as follows:

> In comparing the claimant's residual functional capacity with the physical and mental demands of this work, the undersigned finds that the claimant is able to perform it as actually performed. The claimant's past relevant work as a hair braider required the exertional capacity of sedentary work activity and was unskilled.

(R. 23).

This Court finds that the ALJ's determination regarding the Plaintiff's RFC is confusing and in conflict with the Dictionary of Occupational Titles (hereinafter "DOT") and require clarification by the ALJ. U.S. Dep't of Labor, Dictionary of Occupational Titles, 332.271-018.[3] On remand, the

---

3. Hair Braider is not a job listed in the DOT, however, this Court noted Hair Stylist as a similar job position.

ALJ shall clarify the nature of the Plaintiff's prior work to substantiate a finding on whether the Plaintiff could perform such work in light of DOT's description of Walker's prior job. Accordingly, while remand is required, the Court does not find an award of benefits is warranted at this time.

### III. CONCLUSION AND RECOMMENDATION

Based on the foregoing, this Court finds that the decision of the ALJ was not supported by substantial evidence and that the correct legal standards were not applied. Therefore, it is the recommendation of this Court that the decision of the Commissioner be **REVERSED and REMANDED** for further proceedings consistent with this Report and Recommendation. Accordingly, the Motion for Summary Judgment filed by the Plaintiff (D.E. #19) should be **GRANTED in part** and the Motion for Summary Judgment filed by the Defendant (D.E. #20) should be **DENIED**.

Pursuant to Local Magistrate Rule 4(b), the parties have fourteen (14) days from service of this Report and Recommendation within which to serve and file written objections, if any, with the Honorable Paul C. Huck, United States District Judge. Failure to file objections timely shall bar the parties from attacking on appeal the factual findings contained herein. Loconte v. Dugger, 847 F.2d 745 (11th Cir. 1988), cert. denied, 488 U.S. 958 (1988); R.T.C. v. Hallmark Builders, Inc., 996 F.2d 1144, 1149 (11th Cir. 1993).

**DONE AND ORDERED** this ___ day of February, 2011.

ROBERT L. DUBÉ
UNITED STATES MAGISTRATE JUDGE